CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 02 2008

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Douglas P. Brown,<br><br>*Plaintiff,*<br><br>v.<br><br>The Rector and Visitors of the University of Virginia, et al.,<br>*Defendants.* | CIVIL ACTION NO. 3:07cv00030<br><br><br>MEMORANDUM OPINION AND ORDER<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (docket entry no. 3). The defendants assert that the plaintiff's claims fail because the Eleventh Amendment bars any form of relief against the University of Virginia and that defendant James A. Marshall is entitled to qualified immunity in his personal capacity. The defendants also argue that the plaintiff does not have a property interest in his continued enrollment in the Department of Chemistry and, therefore, has not been violated of his right to due process. For the following reasons, I hereby GRANT the defendants' motion to dismiss and ORDER this case stricken from the docket.

## I. BACKGROUND

The plaintiff, Douglas P. Brown ("Brown"), applied for admission to the University of Virginia ("University") Department of Chemistry in the fall of 2000. The University offered Brown admission to the graduate program by letter dated December 11, 2000, to begin in the spring of 2001. The letter also included an offer to work as a graduate teaching assistant beginning in the fall of 2001, which would provide a $17,000 stipend plus his tuition and fees. Brown accepted the offer

of admission, but declined the teaching assistant position and expressed interest in working as a research assistant instead.

Brown enrolled in the Department of Chemistry in January 2001 and, in the fall of 2001, was offered and accepted a position as a research assistant. Brown completed the requirements for the Department of Chemistry's Ph.D. program and took the Ph.D candidacy exam in December 2002. James A. Marshall ("Marshall"), the Chair of the Graduate Studies Committee of the Department of Chemistry, informed Brown by electronic mail dated February 20, 2003, that he graded "Unsatisfactory" on his candidacy exam and referred Brown to the Department of Chemistry's Graduate Student Handbook for options on how he could obtain a M.S. degree and later reapply for Ph.D candidacy.[1]

Brown elected to write a M.S. thesis and intended to reapply for candidacy to the Ph.D. program. Marshall subsequently informed Marshall on December 9, 2003, however, that he was in violation of department rules concerning students that fail the candidacy exam. Brown met with Marshall and the Graduate Studies Committee of the Department of Chemistry in January 2004 and was informed that the Department of Chemistry interpreted the term "support," as set forth in the Graduate Student Handbook, to mean the ability of a student to remain a student in the Department of Chemistry. Accordingly, the Graduate Studies Committee explained that Brown had violated department rules because he had not timely completed his M.S. thesis by August 2003 as required by the Department of Chemistry.

---

[1]Section V(C)(2)(j) of the Graduate Student Handbook provides that candidates who fail their candidacy exam will not be advanced to candidacy for the Ph.D. program, but will be permitted to complete a master's degree. The student may elect to terminate with a M.A. degree or write a M.S. thesis and reapply for candidacy to the Ph.D. program. The Department of Chemistry will provide support for a student who elects to terminate with a M.A. degree through May and will provide support for a student that elects to write a M.S. thesis through August of that year.

2

Brown disagreed with this interpretation and, believing there to be no time limit to complete his M.S. degree, continued to pay tuition and take courses in the Department of Chemistry over the next two years. In the spring of 2006, the Department of Chemistry notified Brown that he had been retroactively removed as a student and that his tuition for that semester would be refunded.

Brown subsequently filed suit against Marshall and the Rector and Visitors of the University in June 2007. Specifically, Brown alleged that, by removing him as a student from the Department of Chemistry, the defendants (1) denied him a property interest without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution and (2) breached their contract with him. Accordingly, Brown asked for relief by (1) a declaratory judgment that the defendants' actions violated the Due Process Clause and constituted a breach of contract; (2) a permanent injunction pursuant to 42 U.S.C. § 1983 requiring the defendants to reinstate him as a student in the Department of Chemistry's M.S. program; (3) compensatory damages for reduced and delayed earnings potential; and (4) attorney's fees pursuant to 42 U.S.C. § 1988.

The defendants filed a motion to dismiss in response pursuant to Federal Rule of Civil Procedure 12(b)(6) and argue that (1) the Eleventh Amendment bars any award of compensatory, declaratory, or injunctive relief against the University; (2) the Eleventh Amendment bars the award of compensatory relief against Marshall in his official capacity; (3) neither the University nor Marshall in his official capacity is considered a "person" under 42 U.S.C. § 1983; (4) Marshall is entitled to qualified immunity in his personal capacity; (5) Brown does not have a property interest in his continued enrollment at the University; (6) Brown has not alleged a due process violation even if he did have a property interest in his continued enrollment because the process required in an academical decision is minimal; (7) Brown's claim of a due process violation is barred by the applicable statue of limitations; and (8) Brown's claim for breach of contract claim fails because no

3

contract existed between the parties.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Therefore, while Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face;" plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.

## III. DISCUSSION

### A. The University and Marshall in His Official Capacity Are Immune

It is well settled that the Rector and Visitors of the University, as an instrumentality of the state, is immune from suit in federal court pursuant to the Eleventh Amendment. *See, e.g., Tigrett v. Rector & Visitors of Univ. of Va.*, 97 F. Supp. 2d 752, 756 (W.D. Va. 2000). This immunity applies to all of Brown's claims against the University for compensatory, declaratory, and injunctive

4

relief. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that the Eleventh Amendment exception for prospective injunctive relief provided by *Ex parte Young*, 209 U.S. 123 (1908), applies only to state officials and not to States or their agencies); *Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding that a State is immune from declaratory judgments that would provide retrospective relief pursuant to the Eleventh Amendment). Accordingly, Brown's claims of relief against the University must be dismissed because the University is absolutely immune from suit as an instrumentality of the state.[2]

Further, Brown's claim for compensatory damages against Marshall is also barred by the Eleventh Amendment. A suit against a state official in his official capacity is not considered a suit against the official, but rather a suit against his office and, as such, is no different than a suit against the State itself.[3] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment does not bar, however, claims against an individual defendant in his official capacity for declaratory or prospective injunctive relief. *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Tigrett*, 97 F. Supp. 2d at 756. Accordingly, Marshall is dismissed in his official capacity, but only to the extent that Brown seeks compensatory damages and Brown's claims for declaratory and injunctive relief against Marshall in his official capacity survive.

---

[2]As a result, I need not consider the University's defense that it is not a "person" pursuant to 42 U.S.C. § 1983 as the University must otherwise be dismissed from this suit.

[3]Brown did not specifically identify in his Complaint whether Marshall is being sued in his personal or official capacity. Nevertheless, a demand for compensatory damages sufficiently indicates that Marshall is being sued in his personal capacity because such relief is not available in an official capacity suit. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

5

## B. Marshall Is Entitled to Qualified Immunity in His Personal Capacity

The doctrine of qualified immunity shields a government official sued in his personal capacity from civil liability when performing discretionary functions so long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is to be decided early in the proceedings so that the costs and expense of trial may be avoided where the defense is applicable and requires the district court to perform a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (explaining that qualified immunity is an immunity from suit that protects officials from having to stand trial or face the other burdens of litigation). First, the court must determine if the government official violated the plaintiff of an actual constitutional right. *Id.* at 201. If the court finds that no constitutional right has been violated, there is no need for further inquiry because the plaintiff cannot prevail. *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2001). If, however, the plaintiff alleged sufficient facts to show a constitutional violation, the court must determine if, at the time of the violation, the constitutional right was clearly established by determining "whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier*, 533 U.S. at 201–02).

Brown alleges that the defendants deprived him of his right to due process of law when he was dismissed from the Department of Chemistry's graduate program. A claim for a deprivation of due process—whether procedural or substantive—requires the plaintiff to show that (1) he has a constitutionally protected "liberty" or "property" interest and (2) that he has been deprived of that interest by state action. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972).

6

*1. The Court Assumes that Brown Has a Property Interest in His Enrollment*

Brown argues that he had a property interest in his continued enrollment in the Department of Chemistry once he was accepted into the program and enrolled in it. The Supreme Court has stated that a person does not have a property interest merely because he has an abstract need or desire or unilateral expectation of that property interest. *Roth*, 408 U.S. at 577. Instead, a person must have a legitimate claim of entitlement to the property interest, which is created not by the Constitution, but by existing rules or understandings that stem from an independent source such as state law. *Id.* Therefore, Brown cannot have a property interest in his continued enrollment in the Department of Chemistry's graduate program unless there is an underlying state created interest. I will assume, however, for the purposes of this litigation that Brown does have a protected property interest in his continued enrollment. *See, e.g., Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983) (assuming student had property interest); *Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 826 (W.D. Va. 1999) (same). *But see Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005) (holding that student did not have property interest in continued enrollment in a public education institution).

*2. Brown Has Not Been Deprived of His Interest in His Enrollment by State Action*

Brown does not state specifically in his Complaint whether the defendants deprived him of his right to procedural or substantive due process, but the thrust of his claim suggests that his claim involves procedural due process because he claims that (1) he did not receive notice—either written or verbal—of his removal; (2) he did not receive a hearing regarding his removal; (3) he did not have an opportunity to respond to the Department of Chemistry prior to his removal; and (4) he did not receive information on how to appeal the decision. Brown's brief in opposition to the defendants' motion to dismiss supports this view as it refers specifically to procedural due process

7

and does not reference substantive due process. (Pl.'s Mem. in Opp'n of Defs.' Mot. to Dismiss 5).

The first step in analyzing whether Brown was deprived of his right to procedural due process is to determine whether his dismissal from the Department of Chemistry was for academic or disciplinary reasons. The Due Process Clause requires that a student receive notice and an opportunity to be heard in a disciplinary context, *Tigrett v. Rector & Visitors of Univ. of Va.*, 137 F. Supp. 2d 670, 674–75 (W.D. Va. 2001); *see also Goss v. Lopez*, 419 U.S. 565, 581 (1978), but does not place such stringent procedural requirements in the case of an academic dismissal, *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978). Instead, no type of formal hearing is required in an academic dismissal because of the subjective nature of an academic evaluation, which requires an expert evaluation of the information and does not lend itself to judicial or administrative decisionmaking.[4] *Clark v. Whiting*, 607 F.2d 634, 644 (4th Cir. 1979).

Here, Brown's dismissal involved an academic, not disciplinary decision, and therefore, he received sufficient process to satisfy the requirements of due process. Marshall notified Brown on February 20, 2003, that he had failed his Ph.D. candidacy exam and again on December 9, 2003, that he was in violation of department rules regarding students who had failed the candidacy exam. Brown met with Marshall and the Graduate Studies Committee of the Department of Chemistry in January 2004, which informed him that he had not completed his M.S. thesis within the required deadline. Thereafter, Marshall and the Graduate Studies Committee dismissed Brown for academic reasons because of his failure to perform the work required by the Department of Chemistry for the

---

[4]In contrast, disciplinary dismissals typically involve a violation of valid rules of conduct or disruptive and insubordinate behavior. *Horowitz*, 435 U.S. at 86, 90. As such, a disciplinary dismissal is more objective and less dependant upon the expertise of professional academics. *Id.* at 89–90.

8

M.S. degree.[5] Brown has not alleged any facts to suggest that Marshall did not act in a "careful and deliberate" manner in dismissing him from the Department of Chemistry. *See Horowitz*, 435 U.S. at 85 (finding that "careful and deliberate" decision to dismiss student for academic reasons satisfied the Due Process Clause). Accordingly, I find, based on the facts alleged in the Complaint, that Marshall did not violate Brown's right to procedural due process because he amply satisfied its requirements by providing notice and an opportunity to be heard—neither of which is required by the Due Process Clause when a student is dismissed for academic reasons. *Clark*, 607 F.2d 634 at 644–45; *Cobb*, 84 F. Supp. 2d at 749 ("[D]ue process does not require *any* type of formal hearing in the context of academic dismissals.").

Moreover, Brown has not alleged a violation of his right to due process even if his dismissal were construed as a disciplinary dismissal. Brown was notified on December 9, 2003, that he was in violation of departmental rules regarding students who had failed the Ph.D. candidacy exam and was provided an opportunity to be heard in January of 2004. This minimal process is all that is required in the context of student discipline. *Goss*, 419 U.S. at 579–81; *see also Cobb*, 84 F. Supp. 2d at 749. Thus, I find that Brown has failed to allege that his constitutional right to due process has been violated and, therefore, that Marshall is entitled to qualified immunity in his personal capacity. Moreover, the claim against Marshall in his official capacity must also be dismissed as Brown has failed to state a claim for which relief may be granted. Therefore, Brown's first cause of action is dismissed.

---

[5]The University inexplicably permitted Brown to continue taking courses within the Department of Chemistry until the spring of 2006, but Brown had full knowledge during this time of the Graduate Studies Committee's decision that he could no longer remain a student in the Department of Chemistry because he had not completed the required M.S. thesis by the required deadline. Thus, it is the January 2004 meeting, not the spring 2006 retroactive removal, that is relevant to the issue of whether Brown received adequate process.

9

## C. The Graduate Student Handbook Did Not Constitute a Contract

It is well settled that Virginia law requires an absolute mutuality of engagement between the parties to a contract such that each party is bound and has the right to hold the other party to the agreement. *See Smokeless Fuel Co. v. W.E. Seaton & Sons*, 105 Va. 170, 52 S.E. 829, 830 (1906) ("The general rule of law is that, where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement."); *see also Piland Corp. v. REA Constr. Co.*, 672 F. Supp. 244, 247–48 (E.D. Va. 1987). If both parties are not bound, then the contract is illusory and is unenforceable. *See Smokeless Fuel Co.*, 52 S.E. at 830 ("Both parties must be bound or neither is bound.").

Here, the Graduate Student Handbook clearly states that it is subject to the requirements of the University's Graduate Record, and the Graduate Record explicitly disclaims that it is not to be construed as a contract between the student and the University. In addition, the University explicitly reserves the right to change any provision or requirement at any time during a student's enrollment. This plain language makes clear that the University is not bound by the statements in the Graduate Record or the Graduate Student Handbook, which makes the Graduate Record, at most, an illusory contract because of the illusory nature of its terms. *See Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (finding university course catalog to be an unenforceable illusory contract because while it purports to promise specified performance by the university, the performance is entirely optional because of the catalog's disclaimer that it may change its terms or requirements at any time); *see also Truell v. Regent Univ. School of Law*, No. 2:04:cv716, 2006 WL 2076769, at *6–7 (E.D. Va. July 21, 2006) (same). Therefore, any attempt to construe the Graduate Student Handbook and/or the Graduate Record as a contract would be in error because no mutuality

10

of engagement existed between the student and the University. *Davis*, 395 F. Supp. 2d at 337. Accordingly, I find that no contract existed between the University and Brown and therefore will dismiss his claim for breach of contract because of his failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated herein, I find that (1) the University is immune from all claims because of sovereign immunity; (2) Marshall is entitled to qualified immunity in his personal capacity as to Brown's due process claim; (3) Brown has failed to state a claim for deprivation of due process; and (4) no contract existed between the University and Brown. Accordingly, Brown has failed to state any claim upon which relief may be granted and, therefore, I must dismiss all claims against the University and Marshall.

Moreover, I will deny Brown's motion for leave to amend the Complaint (docket entry no. 12) because he has not established that the Rector and Visitors of the University had any involvement in their individual capacity in his dismissal and because his claims against Marshall, and in conjunction the Graduate Studies Committee, have been found to be insufficient to grant any form of relief.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

Entered this 2nd day of May, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

11